PEOPLE v JOHNSON (ON REHEARING)

Docket No. 134312. Submitted December 14, 1993, at Detroit. Decided August 31, 1994. Submitted on rehearing October 25, 1994. Decided on rehearing December 20, 1994, at 9:00 A.M. Leave to appeal sought.

Gary C. Johnson was convicted in the Recorder's Court of Detroit, M. John Shamo, J., of second-degree murder and possession of a firearm during the commission of a felony. By stipulation, the matter was tried without a jury with the sole evidence being the statement and preliminary examination testimony of a witness, who had been murdered before the trial, and the medical examiner's report. The statement and testimony of the witness indicated that the defendant and another person entered the home of James Bowen and that, while the defendant was taking money and food stamps from the witness at gun-point, the person accompanying the defendant shot Bowen. Bowen subsequently died as a result of having been shot. The court found that the defendant's companion murdered Bowen, that the murder was neither premeditated nor in the course of a felony, thus being second-degree murder, and that the defendant had aided and abetted his companion. The defendant appealed. The Court of Appeals, MARILYN KELLY, P.J., and WHITE and D. F. BRECK, JJ., affirmed. Unpublished opinion per curiam of the Court of Appeals, decided August 31, 1994 (Docket No. 134312). The Court of Appeals granted the defendant's motion for rehearing and issued an amended opinion.

On rehearing, the Court of Appeals *held*:

1. Administrative Order No. 1994-4 makes binding the decision in *People v Spearman*, 195 Mich App 434 (1992), which requires a finding that the evidence in this case is sufficient to support the conviction of second-degree murder.

2. Because it is manifest that the trial court was aware of the factual issues and resolved them, review by the Court of Appeals would not be facilitated by a remand to the circuit court for further explication of the path it took to reach its result.

3. The defendant was not denied a fair trial as a result of the prosecution's references to the murder of the witness, it being

clear that the trial court was aware that the defendant was not responsible for the death of the witness.

4. The record fails to support the claim that the defendant was denied effective assistance of counsel at trial.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ralph C. Simpson* and *Michael J. Steinberg*), and Gary C. Johnson, in propria persona, for the defendant on appeal.

### ON REHEARING

Before: MARILYN KELLY, P.J., and WHITE and D. F. BRECK,* JJ.

PER CURIAM. Defendant appeals as of right his bench trial convictions of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). We affirm.

On December 2, 1989, James Bowen was shot in the abdomen while lying on his living room couch. Bowen later succumbed to the wound. Defendant was arrested and charged with first-degree murder, armed robbery, and felony-firearm, after a witness, Charles Moore, identified defendant as one of the two men who had entered Bowen's house with drawn weapons and as the man who had robbed Moore just before Bowen was shot by the second intruder.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Moore gave two statements to the police. In his second statement, given the day after Bowen died, Moore told police that on the day of the shooting he was visiting Bowen's house, sitting in the dining room with an acquaintance while Bowen slept on the couch. Two armed men entered the house. One, wielding a long gun, grabbed Moore, made him get down on the floor, and took $40 or $50 and some food stamps from his pockets. Moore heard a gunshot in the living room. The second man, who carried a snub-nosed revolver, came into the dining room from the living room. Moore's assailant told his companion, "Don't shoot him, man, we friends." The second man raised his gun and responded, "I like to kill." After Moore's assailant said, "Come on man, let's go, let's go," the two men left the house. Bowen called to Moore to get an ambulance because he had been shot. Moore's statement contained a description of both men and indicated that while he did not know the man who had been in the living room with Bowen, he had seen his own assailant before in the neighborhood, or in Bowen's company.

Moore was the sole witness at the preliminary examination. He identified defendant as his assailant and, except for omitting reference to the conversation between the two assailants, testified in accord with his statement to the police. His testimony indicated that defendant's companion had followed defendant into the house and that previously he had seen defendant with Bowen.

By the time of trial, Moore was himself murdered. Defendant waived his right to a jury trial and stipulated that, in light of Moore's death and the circumstances of other res gestae witnesses,[1]

---

[1] One witness, who had been present elsewhere in the house, had not witnessed the actual events. Another was unwilling to testify and had made himself hard to locate.

Moore's statement and his testimony at defendant's preliminary examination would suffice for trial. Defendant also stipulated to the admission of the medical examiner's report. Thus, because defendant did not present any witnesses, there was no live testimony, and the trial court relied exclusively on the stipulated evidence. The court found that Bowen was shot and killed by defendant's companion, but that the murder was not first-degree premeditated murder or felony murder in the course of an armed robbery. However, because both men had carried weapons, the court found that defendant was guilty of aiding and abetting his companion in the shooting and, thus, was guilty of second-degree murder and felony-firearm. The court found defendant not guilty of armed robbery. Defendant appeals this ruling, raising issues both through counsel and in propria persona. The prosecution has not filed a cross appeal.

Defendant, through counsel, first argues that the evidence was insufficient to support his conviction as an aider and abettor of second-degree murder, because there was no evidence that defendant intended, assisted, or encouraged the shooting and the undisputed evidence indicates that he told his companion not to shoot. However, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the prosecutor, we are compelled to conclude that the evidence was sufficient to enable a rational trier of fact to find defendant guilty.

The elements of murder are (1) the killing of a human being (2) with the intent to kill, or to do great bodily harm, or with wilful and wanton disregard of the likelihood that the natural tendency of one's actions will be to cause death or great bodily harm. *People v Kelly,* 423 Mich 261,

273; 378 NW2d 365 (1985); *People v Spearman,* 195 Mich App 434; 491 NW2d 606 (1992).

We would have been inclined to find defendant not guilty of murder, but guilty of armed robbery. However, under *Spearman, supra,* which is binding authority under Administrative Order No. 1994-4, the evidence was sufficient to support a conviction of second-degree murder. The evidence indicates that defendant entered the home of a friend, or acquaintance, armed and intending to commit a robbery, in the company of a man who was also armed and who "like[d] to kill." The evidence that defendant's companion followed him in, did not participate in the robbery, and followed defendant's directive to leave after defendant had completed the robbery suggests that defendant was the leader in the operation. As a whole, the evidence gives rise to the same inference of wilful and wanton disregard of the possibility that death or great bodily harm would result from a planned robbery involving weapons that was permitted in *Spearman, supra,* pp 439-440.

Defendant, through counsel, secondly argues that the trial court failed to make sufficient findings of fact because there were no explicit findings concerning intent and that the court did not address the evidence that suggested that defendant did not intend the shooting.

By court rule, a trial court sitting without a jury must make separate findings of fact and conclusions of law. MCR 2.517(A)(1). The purpose of articulation is to facilitate appellate review. *People v Armstrong,* 175 Mich App 181, 184; 437 NW2d 343 (1989). Remand for additional articulation is unnecessary where it is manifest that the court was aware of the factual issues and resolved them and it would not facilitate appellate review to require further explication of the path the court

followed in reaching the result. *Id.* That is the case here.

Defendant, on his own behalf, also argues that the prosecutor's references to Moore's death at the time of trial were prejudicial and inflammatory. We disagree. The prosecutor was required to show why Moore was unavailable to testify. MRE 804(b)(1). As the court's later comments indicate, it was aware that defendant was not responsible for Moore's death because defendant was in custody at the time. The prosecutor's statements thus did not deny defendant a fair and impartial trial. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989).

Finally, defendant argues that he was denied effective assistance of counsel because his counsel did not investigate the case, waived opening and closing arguments, failed to discuss strategy with him, waived his right to a jury trial, waived witnesses and reports, did not object to the prosecutor's remarks, and did not move to suppress the preliminary examination testimony.

In the absence of an evidentiary record regarding defendant's claims, our review is limited to deficiencies apparent on the record. *People v Armendarez,* 188 Mich App 61, 74; 468 NW2d 893 (1991). Thus, we are unable to address counsel's alleged failures to investigate the case and discuss strategy with defendant.

However, the record indicates that defendant himself waived his right to a jury, and stipulated to the admission of Moore's preliminary examination testimony and statement to the police and of the medical report. The remaining "failures" do not constitute necessarily a deficient performance or a serious error, and we will not assume that they were the product of ineffectiveness rather than counsel's trial strategy: counsel's waiver of

opening and closing arguments resulted in the prosecutor's forgoing argument as well. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991).

Affirmed.