# STATE OF MICHIGAN

# COURT OF APPEALS

JOEL ROSENFELD,

        Plaintiff-Appellee/Cross-Appellant,

v

AMY BETH ROSENFELD,

        Defendant-Appellant/Cross-
        Appellee.

UNPUBLISHED
November 6, 2014

No. 318084
Oakland Circuit Court
LC No. 2011-785316-DM

Before: GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

On May 31, 2013, the circuit court entered a judgment dissolving the 17-year marriage of plaintiff Joel Rosenfeld and defendant Amy Rosenfeld. The parties now challenge various aspects of the circuit court's ruling, as well as its decision on motions filed during and after the proceedings. We discern no error in the lower court's resolution of property division, child custody, and attorney fee issues. However, the court failed to adequately address the factors related to Mrs. Rosenfeld's request for spousal support and erred in imputing income to her based on insufficient information in relation to both the spousal and child support awards. Accordingly, we affirm in part but vacate the spousal and child support awards and remand for further proceedings on those issues alone.

## I. BACKGROUND

When the parties met in 1994, each had been gainfully employed for at least a decade. Dr. Rosenfeld had a medical degree and practiced surgical ophthalmology, earning between $400,000 and $600,000 annually. He also had a license to practice law, which he used only in a limited fashion. Mrs. Rosenfeld was a psychiatric nurse, earning $36,000 each year. Shortly after their 1996 marriage, Dr. Rosenfeld began suffering from several health conditions that allegedly limited his ability to work. He therefore sold his medical practice and began collecting $10,500 monthly from a disability insurance policy. Dr. Rosenfeld may have augmented this income with the profits of stock day trading, an activity that he took up with a fervor. Mrs. Rosenfeld continued to work at that time.

In 2004, Mrs. Rosenfeld gave birth to a daughter, and in 2006, to twin sons. The children all had health issues that required frequent doctor visits. The parties agreed that Mrs. Rosenfeld would remain home and care for the children. Despite having the full-time care of their mother,

-1-

Dr. Rosenfeld insisted that the family employ around-the-clock nannies as well. He later admitted to Mrs. Rosenfeld that he wanted the nannies to keep watch over her.

While the family's monthly income was greatly reduced when Dr. Rosenfeld stopped practicing medicine, and was further diminished when Mrs. Rosenfeld became a stay-at-home mother, the parties continued to live as if no financial change had occurred. They spent more than $25,000 each month on expenses related to their marital and vacation homes, tri-annual vacations, private school, children's camps, and expensive clothes. Dr. Rosenfeld also spent significant sums on continuing medical and legal education even though he no longer practiced either profession. As a result of their excessive spending and borrowing, the parties accumulated high credit card debt and owed a mortgage debt nearly twice the value of their home.

When Dr. Rosenfeld filed for divorce in 2011, Mrs. Rosenfeld began looking for work. She claimed to have experienced difficulty finding something flexible enough to accommodate her children's schedules. Accordingly, she remained unemployed throughout the proceedings. The parties reached a pretrial agreement regarding custody and parenting time, with Mrs. Rosenfeld being the primary custodian. Dr. Rosenfeld later moved to amend the agreement, but the circuit court refused. Dr. Rosenfeld was also ordered by the court to pay $1,831.58 in monthly child support. Following the extended divorce trial, the court equally divided the marital property, and ordered the parties to repay their own debts. The court also ordered Dr. Rosenfeld to pay his wife $1,000 monthly spousal support. Both parties sought to shift the burden of their attorney fees onto each other, but the court rejected those attempts.

## II. SPOUSAL AND CHILD SUPPORT

On appeal, Mrs. Rosenfeld contends that the circuit court improperly imputed income to her in calculating the spousal and child support awards. As a result, she asserts that the awards were inequitable. She further challenges that the circuit court did not adequately address the various factors affecting the spousal support consideration. A review of the record reveals that the court did not adequately analyze the factors supporting an award of spousal support or the factors affecting the propriety of imputing income to a party.

## A. THE COURT'S ORDER

In the circuit court's final opinion and order, it spent significant time outlining the property and debts of the parties and dividing those assets. The court then made comparatively short analyses of the child and spousal support issues. In relation to child support, the court noted that Dr. Rosenfeld's income from disability payments was $10,500 each month, for an annual total of $126,000. In relation to Mrs. Rosenfeld, the court noted that she "has the capacity based on previous earnings, as well as her education and skill, to earn her previous wage of $36,000 per year." Based on the number of annual overnight custodial periods for each party and applying the Michigan Child Support Formula (MCSF), the court ordered Dr. Rosenfeld to remit $1,831.57 each month in child support.

In relation to spousal support, the court noted that it should consider various factors outlined in *Thames v Thames*, 191 Mich App 299, 308; 477 NW2d 496 (1991), and asserted its belief that "heavy emphasis" must be placed "on the abilities of the parties to support

themselves." The court first noted the length of the marriage. In relation to Dr. Rosenfeld's ability to support himself, the court described:

> [Dr. Rosenfeld] is a doctor and a lawyer. He claims he is unable to work due to a brain cyst, diagnosed in 1997 and resulting in headaches and other medical ailments, including osteoporosis, high blood pressure, coronary heart disease, diverticulitis, and irritable bowel syndrome.

The court then described the property that would be available to the parties after the divorce by stating, "The parties will receive life insurance policies, investment accounts and will receive the proceeds from the sale of the Canada property at closing." The court acknowledged Mrs. Rosenfeld's extensive efforts to secure employment.

The court continued by chastising, "The parties lived beyond their means during the marriage and their expenses far exceeded their income." The parties' monthly income was limited at that time to Dr. Rosenfeld's $10,500 disability insurance payments. Their monthly obligations, however, totaled $28,090. While the expenses related to the Canadian property would soon be relieved due to the property's sale, the couple's debt to income ratio would still be negative.

The court then concluded:

> The court finds that based upon all of the *Thames* factors, as well as the nature of the property awarded to the parties, as well as the parties' incomes and expenses discussed *infra*, [Mrs. Rosenfeld] is entitled to spousal support. The court further finds that [Dr. Rosenfeld] has the ability to pay spousal support based on his income and assets awarded to the parties in this matter.

The court therefore ordered Dr. Rosenfeld to pay his wife $1,000 monthly "until death of [Mrs. Rosenfeld] or until further order of the court.

## B. STANDARDS OF REVIEW

We review for an abuse of discretion a circuit court's award of spousal support, *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012), and underlying factual determinations for clear error. *Id.* at 26. Spousal support is intended "'to balance the incomes and needs of the parties so that neither will be impoverished.'" *Id.*, quoting *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). And we must affirm the lower court's ruling "unless we are convinced that it was inequitable." *Loutts*, 298 Mich App at 26. The decision to award spousal support is fact-intensive and must be considered on a case-by-case basis to determine "what is just and reasonable under the circumstances of the case." *Id.* at 29-30 (quotation marks and citation omitted).

In relation to a child support award, trial courts are required to follow the MCSF. *Borowsky v Borowsky*, 273 Mich App 666, 673; 733 NW2d 71 (2007). We review de novo the interpretation and application of the MCSF. *Id.* at 672. Underlying factual findings are reviewed for clear error. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). To the

extent that the MCSF allows trial courts to make certain discretionary rulings, our review is limited to whether the court abused that discretion. *Id.*

Of note, the decision to impute income to a party when evaluating spousal and child support awards is a matter of discretion. *Loutts*, 298 Mich App at 25-26; *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011).

## C. IMPUTATION OF INCOME

2013 MCSF 2.01(G) allows a court to consider a parent's "potential income" when calculating a child support award. The formula provides, "When a parent is voluntarily unemployed or underemployed, or has an unexercised ability to earn, income includes the potential income that parent could earn, subject to that parent's actual ability." The imputed amount "should be sufficient to bring that parent's income up to the level it would have been if the parent had not voluntarily reduced or waived income." 2013 MCSF 2.01(G)(1). While the decision to impute income is discretionary, a court exercising that discretion must support its decision with "adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Stallworth*, 275 Mich App at 285. The MCSF directs a court to consider certain "relevant factors both to determine whether the parent in question has an actual ability to earn and a reasonable likelihood of earning the potential income." 2013 MCSF 2.01(G)(2). These factors are:

(a) Prior employment experience and history, including reasons for any termination or changes in employment.

(b) Educational level and any special skills or training.

(c) Physical and mental disabilities that may affect a parent's ability to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographical area.

(f) The prevailing wage rates in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status and present means of support.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [*Id.*]

There is no corresponding formula for determining whether to impute income in calculating a spousal support award. See *Loutts*, 298 Mich App at 30 ("Spousal support does not follow a strict formula.").

Here, the circuit court completely failed to consider the factors of 2013 MCSF 2.01(G)(2) when imputing income to Mrs. Rosenfeld. In other sections of its opinion and order, the court considered Mrs. Rosenfeld's education, employment history, and her current job search. The court nowhere discussed the availability of employment in the area or the prevailing wage for nurses in the area. The court ignored the cost of childcare during her parenting time that would impact Mrs. Rosenfeld's earnings from employment outside of the home. It also made no mention of Mrs. Rosenfeld's expressed need to be present for her children's many medical appointments.

While the court did not expressly impute an income of $36,000 onto Mrs. Rosenfeld in calculating the spousal support award, given the inadequacy of the court's analysis as described below, we cannot be certain of the court's reasoning. Accordingly, we must vacate the circuit court's child and spousal support award and remand for further consideration. Until the circuit court can take action, however, the standing orders must remain in effect to allow Mrs. Rosenfeld to support herself and her three children.

## D. REMAINING SPOUSAL SUPPORT ISSUES

As noted above, determining the propriety and adequacy of a spousal support award is a fact-intensive task specific to the circumstances of each case. *Loutts*, 298 Mich at 29-30. To assist lower courts, this Court has described a nonexhaustive list of factors for consideration in determining whether an award of spousal support is just and if so, in what amount. These include:

Factors to be considered are (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, and (12) general principles of equity. In addition, the court may consider a party's fault in causing the divorce. [*Thames*, 191 Mich App at 308 (citation omitted).]

"'The trial court should make specific factual findings regarding the factors that are relevant to the particular case.'" *Loutts*, 298 Mich App at 32, quoting *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). Moreover, in a bench trial, a court must undertake sufficient analysis and make adequate factual determinations, in writing, to permit this Court's review.

MCR 2.517(A)(1); *People v Johnson (On Rehearing)*, 208 Mich App 137, 141; 526 NW2d 617 (1994).

Here, the circuit court did not make sufficient written findings for this Court's review of the spousal support award.

In its written opinion and order, the court noted that the parties were married for 17 years, establishing that it considered factor (2) in its analysis. The court also likely considered the parties' ages, 56 and 49 at the time the judgment was entered, as that factor was mentioned elsewhere in the opinion, thereby meeting factor (5).

The circuit court made no reviewable analysis of the first spousal-support factor: "the past relations and conduct of the parties." In describing the breakdown of the marriage, the court relied upon the parties' disputes over childcare and the need for nannies, as well as Mrs. Rosenfeld's concern that Dr. Rosenfeld was hiding information about their finances. The court never applied this information in its consideration of the equity of spousal support in this case. The court also never considered fault in its analysis.

The court analyzed the parties' abilities to work as set forth in factor (3) and health as set forth in factor (9). The court noted the degrees and past careers of both parties, and outlined Mrs. Rosenfeld attempts to find employment. The court also considered the various health issues claimed by Dr. Rosenfeld. However, the circuit court never determined whether those health issues actually prevented Dr. Rosenfeld from working. Mrs. Rosenfeld testified during the trial that Dr. Rosenfeld had never told her that he suffered from headaches that lasted five hours or that they occurred up to three times a week, despite his claim that he had experienced these headaches since 1997. Additionally, despite these allegedly debilitating headaches, Mrs. Rosenfeld testified that Dr. Rosenfeld spent hours before a computer every day studying the stock market and trading stocks. Dr. Rosenfeld admitted that he left the house on a daily basis, sometimes staying away as long as 12 hours, doing errands and participating in his investment activities. Based on this evidence, the court should have assessed the credibility of the witnesses and considered the actual extent of Dr. Rosenfeld's disability and whether he was able to work and earn a higher income.

The court also engaged in a general consideration of several factors in a confused fashion without making specific conclusions and omitted reference to other factors that were considered in other sections of the judgment and should have been tied to the spousal support award. First, the court made no mention of the value of the property awarded to each party in the property division and thereby omitted any thoughtful consideration of the fourth spousal support factor: "the source and amount of property awarded to the parties." While the court considered the contributions made by the parties to the marital estate in making its property division, it again failed to consider this information in relation to factor (11): "contributions of the parties to the joint estate." In relation to the "present situation of the parties" as contemplated in factor (7), the court generally referenced the life insurance policies, investment accounts, and property sale proceeds that would be available to the parties. However, the court failed to take the next logical step and consider whether those funds would be adequate to provide for the needs of the parties as contemplated in factor (8). While the court carefully outlined the monthly financial obligations of the parties as a unit, it engaged in no analysis of the parties' roles in creating those

obligations, the need versus desire to continue certain expenditures, or the parties' abilities as individuals to continue payment of necessary costs. The court's order therefore only superficially considered factor (10).

Finally, we note that the court made no considered analysis of Dr. Rosenfeld's ability to pay spousal support or of the amount needed by Mrs. Rosenfeld to support herself. Accordingly, we lack the means to consider the propriety of the $1,000 monthly award. Therefore, we vacate the spousal support award and remand for further consideration, after which the circuit court should outline its analysis to assist our review.

## III. ATTORNEY FEES

Both parties challenge the circuit court's denial of their request for attorney fees at the other's expense. We review for an abuse of discretion a trial court's decision to grant or deny a request for attorney fees, and any underlying factual findings for clear error. *Loutts*, 298 Mich App at 24.

Attorney fees "may be awarded to enable a party to carry on or defend" a domestic relations action. *Ewald v Ewald*, 292 Mich App 706, 724; 810 NW2d 396 (2011) citing MCL 552.13(1), and MCR 3.206(C). The moving party bears the burden of proof. *Ewald*, 292 Mich App at 725. Pursuant to MCR 3.206(C)(2), the moving party must establish one of two scenarios:

(a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

In determining whether a party has the financial capability to pursue or defend the action, the court may not require the party to invade the assets necessary for his or her support to meet his or her attorney fee obligation. *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010). Accordingly, the court must consider the property division "in tandem" with the request for attorney fees to determine if the party was awarded sufficient liquid assets for support and litigation. *Woodington v Shokoohi*, 288 Mich App 352, 370; 792 NW2d 63 (2010). And, as provided in the court rule, a party may also seek attorney fees when the opposing party engaged in unreasonable conduct that unnecessarily increased the cost of litigation. *Borowsky*, 273 Mich App at 687.

In the opinion and order, the circuit court found that Mrs. Rosenfeld had already paid her counsel $80,749.40, and owed an additional $29,749.33. Dr. Rosenfeld, on the other hand, had retained a series of attorneys and expert witnesses. At that time, he had paid in excess of $103,000 and owed $166,500, according to the court's calculations. The court agreed that each party had "incurred significant attorney fees and costs, as well as expert fees." The court determined that each had "contributed to the delay of trial" by failing to comply with discovery requests. Mrs. Rosenfeld was also less than truthful in her interrogatory answers regarding her personal financial assets. Dr. Rosenfeld, on the other hand, "rais[ed] warrantless claims and assertions concerning the children," failed to timely share trial exhibits and disclose witnesses,

and "filed frivolous motions and served several subpoenas after the close of discovery." The court reached no conclusion about the parties' abilities to pay their fees.

Mrs. Rosenfeld contends that the circuit court's conclusion that she needed assistance for support meriting a spousal support award is inconsistent with its rejection of her request for attorney fees. Although the court made no consideration of the financial need factor in its opinion, we find it unnecessary to remand. As noted by the court, Mrs. Rosenfeld owes significantly less in fees that Dr. Rosenfeld. Mrs. Rosenfeld's parents assisted her in paying her counsel and she presented no evidence that she was required to repay that sum. Given the extreme debt Dr. Rosenfeld has incurred in this regard, it is unlikely that he can afford to assist Mrs. Rosenfeld with her costs as well. Accordingly, Mrs. Rosenfeld did not satisfy her burden of establishing her entitlement to costs under MCR 3.206(C)(2)(a).

Both parties challenge the circuit court's denial of their request for costs based on the dilatory tactics of the other. We discern no clear error as record evidence supports the circuit court's conclusion that both parties acted unreasonably and contributed to the case's delay.

Mrs. Rosenfeld delayed the proceedings by failing to disclose all her assets during discovery. She omitted reference to her Comerica bank account and an account held by her mother over which she had signing authority. Mrs. Rosenfeld also minimized the amount and value of gifts she received from her parents on a regular basis. We agree with Mrs. Rosenfeld that her husband's dilatory conduct was more severe. Dr. Rosenfeld's repetitive and unnecessary motions and failure to timely produce trial materials increased the cost of the proceedings. However, the court acted within its discretion in determining that each party's conduct prevented his or her request for attorney fees.

## IV. PROPERTY DIVISION

Dr. Rosenfeld also challenges the circuit court's conclusion that the collection of Holocaust artwork he amassed before the marriage was marital property.[1] In the opinion and order, the circuit court ruled:

> [Dr. Rosenfeld] submitted a list of his proposed Personal Property Schedule. The court conditionally admitted the exhibit with expectation that [Dr. Rosenfeld] would testify [that] the list of items he proposed were separate and would substantiate his claim. No testimony was presented concerning the separate or [marital] nature of the list of proposed personal property items.

The court then ordered that the parties' personal property be equally divided.

The goal of a property division award is to reach an "equitable distribution . . . in light of all the circumstances." *Berger*, 277 Mich App at 716-717. When entering a divorce judgment,

---

[1] While Dr. Rosenfeld entitled his appellate challenge as relating to the entirety of his premarital property, he limits the focus of his argument to his Holocaust artwork.

the court must divide "the real and personal estate that shall have come to either party *by reason of the marriage*." MCL 552.19 (emphasis added). This means that a court's first step must be to categorize the parties' property as marital or separate. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Id.* (quotation marks and citation omitted). Whether a particular asset is marital or separate property is a factual determination that we review for clear error. *Id.* at 200.

The evidence presented at trial supports that although Dr. Rosenfeld acquired the Holocaust art before the marriage, these assets were so commingled that they became part of the marital estate. The property list that Dr. Rosenfeld introduced into evidence at trial broadly identified artwork displayed in the living room of the marital home as his separate property. He never specifically testified about the Holocaust art, or any art displayed in the living room, and Mrs. Rosenfeld's counsel did not cross-examine him on this issue. The art was displayed in the living room of the shared family home for 17 years. The artwork was thereby commingled with a marital asset—the home—and became part of the marital estate. The evidence established that the parties treated their home décor as marital property and the court did not clearly err in so deeming.

## V. CHILD CUSTODY

Dr. Rosenfeld challenges the circuit court's treatment of his repeated motions for change of custody after the parties reached a consent judgment on that issue. Specifically, Dr. Rosenfeld contends that he and Mrs. Rosenfeld could not agree on important decisions effecting the children's welfare, requiring a hearing under *Lombardo v Lombardo*, 202 Mich App 151; 507 NW2d 788 (1993). Dr. Rosenfeld complains that the court improperly stated its intent to limit the scope of the hearing to events occurring after the entry of the judgment of divorce. Ultimately, however, the hearing was never held. Because the parties agreed to participate in family counseling to resolve their issues in lieu of a hearing, we find this issue moot.

When parents share joint legal custody, they "share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). When parents cannot agree on an important decision, the court must decide what decision is in the child's best interests. *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), citing *Lombardo*, 202 Mich App at 159. When deciding what is in the child's best interests, the trial court must make findings of fact with respect to each statutory best interest factor listed in MCL 722.23. *Parent v Parent*, 282 Mich App 152, 156; 762 NW2d 553 (2009).

Here, Dr. Rosenfeld filed a series of motions citing the parties' inability to agree on medical treatment for their children. The court eventually scheduled a *Lombardo* hearing for October 28, 2013, to consider Dr. Rosenfeld's complaints. The court indicated, however, that the evidence would be limited to events after the judgment of divorce was entered. On October 16, Dr. Rosenfeld filed a motion to adjourn that hearing and for appointment and court order for family counseling. In that motion, Dr. Rosenfeld stated his hope that family counseling would

allow the parties to resolve their disagreements "in a therapeutic setting." He never sought rescheduling of the *Lombardo* hearing or renewed his motion to change the legal custody of the children. Accordingly, there is nothing for this Court to review at this time.

The circuit court did, however, limited the scope of all future *Lombardo* hearings that may be scheduled. We note that a court cannot determine the best interests of a child as a snapshot without background information to explain the child's current needs. In this case, however, the court has heard testimony throughout the divorce proceedings regarding the parties' disagreements over the children's medical and educational needs. The court therefore does not need that information restated ad naseum. The October 16, 2013 order was likely a protection against unnecessarily extended proceedings.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

-10-

# Court of Appeals, State of Michigan

# ORDER

Joel Rosenfeld v Amy Beth Rosenfeld

Docket No. 318084

LC No. 2011-785316-DM

Elizabeth L. Gleicher
Presiding Judge

Deborah A. Servitto

Amy Ronayne Krause
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, *Rosenfeld v Rosenfeld*, unpublished opinion per curiam of the Court of Appeals (Docket No. 318084), the trial court is ordered to reconsider the spousal and child support orders. The proceedings on remand are limited to those issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

NOV 06 2014

Date

Chief Clerk