*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JULIA HAMLIN,

Plaintiff/Counterdefendant-Appellee,

UNPUBLISHED
April 16, 2020

v

CRAIG HAMLIN,

Defendant/Counterplaintiff-Appellant.

No. 345896
Livingston Circuit Court
Family Division
LC No. 16-007134-DO

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

After a three-week courtship and seven-month marriage, Julia Hamlin filed for divorce from Craig Hamlin and sought financial recovery for personal injury damages caused by Craig's domestic violence. Craig defended by accusing Julia of physical abuse. The trial court credited Julia's version of events and awarded her significant damages. We affirm that judgment, but vacate the attorney-fee award and remand for further consideration consistent with this opinion.

## I. BACKGROUND

When Julia filed for divorce, she raised two counts in her complaint: one for divorce and one accusing Craig of assault and battery for an attack on November 2, 2016. Craig's answer denied assaulting Julia and instead asserted that Julia "went into a fit of rage and assaulted [him] who only defended himself." Craig filed a countercomplaint for divorce, and raised his own claim of "assault and battery" against Julia. He also filed a third count for "common law conversion and trespass to chattel," alleging that Julia had "burned and/or destroyed" and "damaged" his personal possessions, home, and vehicles.

At trial, Craig and Julia testified at length about the events on November 2, 2016. Julia described a lengthy attack during which Craig pulled her around by the hair, punched and kicked her, banged her head on the ground, and damaged her truck with a shovel. Julia eventually escaped to a neighbor's home where she called 911 and was taken by ambulance to the hospital. Julia presented photographs of her injuries, and physician testimony and medical reports supporting that she suffered a mild traumatic brain injury. Julia also reported that the attack damaged her ear drum and caused hearing loss; she could afford neither the recommended surgery nor hearing aids.

-1-

Further, Julia described that she suffered from migraines, nightmares, and post-traumatic stress disorder. As a result of her injuries, Julia claimed a reduced ability to work.

Craig, on the other hand, claimed that Julia flew into a rage and attacked him. Any wounds she suffered, Craig asserted, accidentally resulted from his efforts to defend himself. He denied ever banging Julia's head into the floor or wall or dragging Julia by her hair. Craig further contended that Julia was the one who wielded the shovel and had hit him with it. Craig showed a scar on his leg to the court and testified that it was the remnant of a six-inch gash Julia inflicted that day.

Prior to the divorce trial, Craig pleaded *nolo contendere* to criminal charges of felonious assault and aggravated domestic violence arising out of the November 2, 2016 incident. Julia's counsel in the divorce trial moved to admit a certified copy of his plea. Craig's counsel responded by moving to dismiss Craig's assault and battery counterclaim and asserting that this dismissal would render the plea irrelevant and inadmissible. Nevertheless, the trial court admitted the plea into evidence. At the close of trial, the court found that Craig had assaulted and battered Julia and rejected Craig's counterclaims. The court ordered Craig to recompense Julia $50,000 for damages she had thus far suffered. The court also awarded Julia $250,000 in future damages and $46,860.14 in attorney fees. The trial court granted the judgment of divorce.

Craig now appeals the future damages award and the assessment of attorney fees.

## II. *NOLO CONTENDERE* PLEA

Craig first contends that the trial court erred by admitting a certified copy of his *nolo contendere* plea into evidence. We review for an abuse of discretion a trial court's decision to admit evidence, but review de novo underlying legal questions regarding admissibility. *Nashal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 622 (2018).

"The primary purpose of a plea of *nolo contendere* is to avoid potential future repercussions which would be caused by the admission of liability, particularly the repercussions in potential future civil litigation." *Lichon v American Universal Ins Co*, 435 Mich 408, 417; 459 NW2d 288 (1990).[1] "A *nolo contendere* plea does not admit guilt, it merely communicates to the court that the criminal defendant does not wish to contest the state's accusations and will acquiesce in the imposition of punishment." *Id*. Consistent with this purpose, MRE 410 limits the admissibility of *nolo contendere* pleas in civil proceedings:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

> \* \* \*

---

[1] MRE 410 was amended in 1991 after the release of *Lichon*. However, the quoted principles have remained true thereafter.

(2) A plea of nolo contendere, except that, to the extent that evidence of a guilty plea would be admissible, evidence of a plea of nolo contendere to a criminal charge may be admitted in a civil proceeding to support a defense against a claim asserted by the person who entered the plea[.]

Accordingly, evidence of Craig's *nolo contendere* plea would only be admissible to support Julia's defense to Craig's counterclaim of assault and battery perpetrated by her. It was not admissible for any other purpose, including to challenge Craig's assertion of self-defense.

Craig sought to dismiss his assault and battery counterclaim against Julia to negate the admissibility of his plea, but the trial court did not allow it. Specifically, when Julia's counsel moved to admit evidence of Craig's plea, Craig's counsel interjected:

Your Honor, as the Court's aware the plea of no contest is not admissible on a civil matter unless it's being used for, in contrary to a defense asserted by [Craig] in the counterclaim. I discussed the matter with my client as far as his counterclaim for, as far as battery against him is concerned and we will no longer be pursuing that. So with that being stated, your Honor, we voluntarily move for dismissal of the counterclaim for battery against him.[2]

That takes this out of the realm of being able to use the no contest plea based upon the defense, the, her allegations of battery against him. Thus, I believe under the MRE, Michigan Rules of Evidence it's no longer admissible.

Julia's counsel retorted that Craig had not only raised a counterclaim for assault and battery, but also raised an affirmative defense to Julia's assault and battery claim whereby he accused Julia of assault and claimed he acted in self-defense. Julia's counsel responded that he had "filed a brief with the court," but the court cut him off, stating, "[Attorneys], evidently you have a stipulation to dismiss a counterclaim and to strike some affirmative defenses. I want that put together in writing signed by both of you so I can see exactly what we're talking about and then I'll make a legal ruling on [Craig's] request."

The matter continued two hours later. Craig's counsel indicated that he would be amenable to dismissing the assault and battery counterclaim in exchange for Craig's *nolo contendere* plea being excluded from evidence. The court noted:

There's still the issue of the claim of self defense on the assault claim by [Julia] and whether that would be admissible to rebut the claim of self-defense by [Craig] to the claim of assault by [Julia].

I can't really find a case directly on point. I can find some cases asserting, asserting the claim. I'm of the opinion that it could be allowed to rebut the claim of self-defense of [sic] the part of [Craig], but I'm going to reserve a ruling on it, admitting that exhibit. [Craig's counsel], I'll allow you to do some research you

---

[2] As noted, Craig's counterclaim actually sounded in assault and battery.

can have available for me before tomorrow morning. I'll look at it and make a ruling tomorrow morning.

Craig's counsel provided a brief to the court the following morning. Counsel contended that if Craig voluntarily dismissed his assault and battery counterclaim, his *nolo contendere* plea would be inadmissible under MRE 410. Nothing in the evidentiary rule or in caselaw would permit Julia to present the plea as a challenge to Craig's affirmative defense against her assault and battery count, Craig insisted.

The court characterized Craig's brief as presenting "what I would call a conditional stipulation. It is not an unconditional stipulation." The court described the conditional stipulation as "You do this for me, I do this for you." In the trial court's estimation, "the court rules really don't, the rules of evidence really don't recognize, . . . conditional . . . stipulations. You either stipulate to something or you don't. And then you face the consequences that the Court might give."

For purposes of this appeal, we will presume that the trial court abused its discretion in preventing Craig from voluntarily dismissing his assault and battery counterclaim. Absent this counterclaim, the plea would have been inadmissible. Therefore, the court abused its discretion in admitting evidence of Craig's *nolo contendere* plea.

However, Craig is not entitled to relief as the admission of this evidence was ultimately harmless. See MRE 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). Julia testified at length about the assault perpetrated by Craig. She presented photographs of her injuries, physician testimony, and medical records that corroborated her testimony and contradicted Craig's version of events. The court credited Julia's evidence over Craig's and we may not interfere with that judgment. *Sparling Plastics Indus, Inc v Sparling*, 229 Mich App 704, 716; 583 NW2d 232 (1998). That Craig pleaded no contest to felonious assault and domestic violence was a mere drop in the evidentiary bucket.

## III. FUTURE DAMAGES

Craig challenges the sufficiency of the trial court's factual findings supporting its award of $250,000 in future damages, as well as certain elements of that award. "We review the trial court's findings of fact in a bench trial for clear error . . . ." *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001).

MCR 2.517(A)(1) requires that "[i]n actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2). "Findings of fact regarding matters contested at a bench trial are sufficient if they are 'brief, definite, and pertinent,' and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).

The award of future damages is governed by MCL 600.6301, which provides:

> As used in this chapter:
>
> (a) "Future damages" means damages arising from personal injury which the trier of fact finds will accrue after the damage findings are made and includes damages for medical treatment, care and custody, loss of earnings, loss of earning capacity, loss of bodily function, and pain and suffering.
>
> (b) "Personal injury" means bodily harm, sickness, disease, death, or emotional harm resulting from bodily harm.

At the close of the divorce trial, the court issued its findings and rulings from the bench. Relevant to Craig's appellate challenge, the court awarded Julia $250,000 "[f]or her future damages, fright, shock, humiliation, physical injuries that were sustained: the nightmares, the migraines." Later, in the written judgment of divorce, the court indicated that it awarded Julia "the additional sum of $250,000.00 . . . for her additional damages and injuries, including but not limited to her future pain, suffering, emotional stress and humiliation" as well as in "compensation . . . for her damages, injuries, and future damages."

Craig argues that although "the trial court meticulously went through the testimony of the various parties, . . . it did not, during that recitation, indicate what it was finding, and what it was crediting, other than making some comments against [Craig's] credibility." "The purpose of articulation is to facilitate appellate review. Remand for additional articulation is unnecessary where it is manifest that the court was aware of the factual issues and resolved them and it would not facilitate appellate review to require further explication of the path the court followed in reaching the result." *People v Johnson (On Rehearing)*, 208 Mich App 137, 141-142; 526 NW2d 617 (1994). The trial court did meticulously summarize the evidence in this case before making its factual findings; it discussed the evidence over 30 pages of transcript. We fail to see how remanding this case for further articulation could possibly assist our review, especially given Craig's narrow challenges to the damages award.

Craig's narrow challenges are (1) that "fright, shock, and humiliation" are not future damages "but rather, injuries that occurred on the date of the incident" that were already accounted for in awarding accrued damages; and (2) that "there simply is no indication whether the trial court credited, as to future damages, [Julia's] claims of tinnitus, hearing loss, hair loss, mild traumatic brain injury/concussion, and balance difficulties or, in the alternative, whether it discredited any or all of those and instead credited *only* 'the nightmares, the migraines." (Emphasis in original.)

The trial court recognized that Julia presented evidence that she suffered emotional harms well beyond the date of the assault. The court emphasized Julia's testimony "that she has to go through trauma" at every medical appointment as she must retell the story of the attack at each intake. The court paraphrased Julia's testimony that she suffers continuing "humiliation" because "she lives in a small community" and "people know about the incident, know about the altercation."

The court implied that the physical ailments suffered by Julia impacted her emotional well-being as well. The court noted that Julia continues to suffer annoyance from the loud ringing and

crackling in her ears.  "[D]ebilitating neck pain" and migraines disabled Julia for "[s]ometimes . . . more than a day" and she would "pray for it to stop."

And the court discussed at length Julia's testimony that she continued to experience nightmares:

> [Julia] said she will still have nightmares and wake up.  She'll have images of [Craig] coming after her and being afraid that he might kill her.  She has feelings of being alone and helpless, running away, being chased.  She'll wake up in sweats with her heart pounding.  She can't get back to sleep.  She believes that she is suffering from post traumatic stress disorder.

> She said that the treatment that she receives for that has helped, that she is making headway.  She is learning coping mechanisms, but it has not gotten better.  She said she does not like to talk about what happened.  She doesn't like to think about it, remember about it.  She prays that he will not hurt anybody else.

Given this recitation of the evidence, the court's factual findings sufficed to support its award and to enable our review.[3]  Contrary to Craig's arguments, the court clearly explained that Julia's "fright, shock, and humiliation" are ongoing and that she continues to suffer damages from the effects of at least tinnitus and her brain injury.  Accordingly, Craig has not demonstrated that he is entitled to relief.

## IV.  ATTORNEY FEES

Finally, Craig challenges the trial court's award to Julia of $46,860.14 in attorney fees.  Craig again challenges the sufficiency of the court's factual findings, but also argues that the court failed to resolve whether the requested fees were reasonable.

At the close of its findings on the record, the court indicated that it would award Julia the full amount of her attorney fees—$46,860.14—pursuant to MCL 552.13 and MCR 3.206.  The court justified the award because "the attorney fees were necessitated because of the assault by" Craig and because of Craig's "unreasonable" behavior during trial and discovery, which increased Julia's costs.[4]  The court also made specific findings about the parties' incomes and earning capacities and determined that Craig, but not Julia, was able to pay.

---

[3] We note that the court also explained at length how Julia's injuries had impacted her current and future earning capacity.  However, Craig does not challenge the sufficiency of the court's factual findings in that regard.

[4] Although a court may award attorney fees incurred as a result of the other party's misconduct, *Reed v Reed*, 265 Mich App 131, 164-165; 693 NW2d 825 (2005), "the attorney fees awarded must have been incurred *because of* misconduct." *Id.* at 165 (emphasis added).  To the extent that the trial court awarded the attorney fees as a sanction, the trial court would have been permitted to award only the portion of the $46,860.14 in attorney fees attributed to Craig's misconduct.

We review for an abuse of discretion a trial court's award of attorney fees in a divorce action. An abuse of discretion occurs when the result falls outside the range of principled outcomes. Findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. [*Cassidy v Cassidy*, 318 Mich App 463, 479; 899 NW2d 65 (2017) (cleaned up).[5]]

Generally, "attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). MCL 552.13 and MCR 3.206(D) authorize the award of attorney fees in domestic relations cases. MCL 552.13(1) provides:

In every action brought, either for a divorce or for a separation, the court may require either party to pay alimony for the suitable maintenance of the adverse party, to pay such sums as shall be deemed proper and necessary to conserve any real or personal property owned by the parties or either of them, *and to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency. . . .* [Emphasis added.]

MCR 3.206(D) governs the award of "attorney fees and expenses" and provides:

(1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that

(a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.[6]

The trial court's findings were more than adequate to support that Julia could not afford to litigate the divorce while Craig had sufficient property and income to do so. Indeed, Julia's gross income to-date in September 2018 was "maybe less than $7,000, which would be indicative of a lack of income to be able to pay attorney fees," the court found. Craig, on the other hand, made

---

[5] This opinion uses the new parenthetical "cleaned up" to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

[6] The Supreme Court amended MCR 3.206 effective three days before the court entered its ruling; subsection (D) was not altered.

bank deposits of "$279,000 in 2015; $132,000 in 2016; and $109,000 for the first three months of 2017." The court further noted that Craig possessed a commercial driver's license and could be employed as a truck driver.

However, when awarding attorney fees, a court must also determine the reasonableness of the fee requested. The court made no such finding on the record. "Generally, a party requesting a postjudgment award of attorney fees must show both that the attorney fees were incurred and that they were reasonable." *Souden v Souden*, 303 Mich App 406, 416; 844 NW2d 151 (2013).

> Where the party opposing the taxation of costs challenges the reasonableness of the fee requested, the trial court should inquire into the services actually rendered before approving the bill of costs. However, there is no error in failing to conduct an evidentiary hearing if the parties created a sufficient record to review the issue, and the court fully explained the reasons for its decision. [*Cassidy*, 318 Mich App at 488 (cleaned up).]

When determining the reasonableness of an attorney fee, the trial court should first determine the fee customarily charged in the locality for similar legal services. *Smith v Khouri*, 481 Mich 519, 529; 751 NW2d 472 (2008). "This number should be multiplied by the reasonable number of hours expended in the case. . . ." *Id.* at 531. The trial court should also consider the following nonexhaustive factors when determining the reasonableness of an attorney fee:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 282; 884 NW2d 257 (2016).]

"In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id.*

The trial court in this case considered only the amount of attorney fees actually paid or owed by Julia. The court did not make any findings regarding the reasonableness of the fee award,

-8-

let alone consider any *Pirgu* factor on the record. This was error. Accordingly, we must vacate the attorney-fee award and remand to the trial court to make the required analysis.

We affirm the award of future damages, vacate the attorney-fee award, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher